IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICHARD A.,[1] ) <br> ) <br>       **Plaintiff,** ) <br> ) <br>   v. ) <br> ) <br> KILOLO KIJAKAZI, Acting ) <br> Commissioner of Social Security,[2] ) <br> ) <br>       **Defendant.** ) <br> ) | No. 19 C 6388 <br><br> Magistrate Judge <br> Maria Valdez |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Richard A.'s claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion to reverse or remand the Commissioner's decision [Doc. No. 12] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 21] is granted.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by his first name and the first initial of his last name.

[2] Kilolo Kijakazi has been substituted for her predecessor pursuant to Federal Rule of Civil Procedure 25(d).

# BACKGROUND

## I. PROCEDURAL HISTORY

On November 14, 2011, Plaintiff filed claims for DIB and SSI, alleging disability since February 16, 2011. The claims were denied initially and upon reconsideration, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on November 9, 2012. On November 30, 2012, the ALJ issued a written decision denying Plaintiff's claims, finding him not disabled under the Social Security Act. The Social Security Administration Appeals Council denied Plaintiff's request for review and, upon further appeal, the United States District Court for the Northern District of Illinois upheld the denial of Plaintiff's claims. Thereafter, Plaintiff sought relief before the United States Court of Appeals for the Seventh Circuit, which, in a decision dated July 5, 2016, remanded the case for further proceedings related to the ALJ's consideration of certain medical opinions.

Following remand, a second hearing before the same ALJ was held on April 28, 2017. On June 13, 2017, the ALJ issued a partially favorable decision, finding that Plaintiff was disabled beginning October 25, 2016, when Plaintiff turned age 55. Following a further appeal, on September 19, 2018, this Court remanded the case, finding error in the hypotheticals posed by the ALJ to the testifying vocational expert ("VE"). The Appeals Council then affirmed the ALJ's finding as of Plaintiff's 55th birthday, but remanded the case for further proceedings on the time period before Plaintiff turned age 55.

2

Following the Appeal Council's remand, the case went to a different ALJ for consideration of the time period between February 16, 2011, Plaintiff's alleged onset date, and October 24, 2016, the day before Plaintiff turned age 55. A third hearing was held on July 2, 2019. Plaintiff personally appeared and testified at the hearing and was represented by counsel. A VE also testified. On July 15, 2019, the ALJ issued a decision finding that Plaintiff was not disabled under the Act for the time period between February 16, 2011 and October 24, 2016. The Appeals Council then denied Plaintiff's request for review, leaving the ALJ's July 15, 2019 decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. ALJ DECISION

In the ALJ's July 15, 2019 decision, Plaintiff's claims were analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found at step one that for the pertinent time period – *i.e.*, between February 16, 2011 and October 24, 2016 – Plaintiff had engaged in substantial gainful activity for the time period between June 19, 2012 to July 31, 2012. At step two, the ALJ concluded that, over the relevant time period, Plaintiff had the following severe impairments: the late-effects of surface burn injuries secondary to self-immolation; the late-effects of a traumatic amputation of the non-dominant left hand index fingertip status-post surgical reattachment; depressive disorder; and history of an ethanol use disorder. The ALJ

3

concluded at step three that Plaintiff's impairments over the pertinent timeframe, alone or in combination, do not meet or medically equal any listed impairments.

Before step four, the ALJ determined that from February 16, 2011 to October 24, 2016, Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following additional limitations: never climbing ladders, ropes, or scaffolds; no more than occasional stooping, kneeling, crouching, or crawling; no more than frequently reaching above the shoulder with both arms, and never repetitively performing twisting motions of the neck; performing no more than simple, routine, repetitive tasks, performed in a predictable and routine work setting; understanding, remembering, and carrying out no more than simple instructions of one or two steps, consistent with Specific Vocational Preparation 1 and 2 jobs; sustaining concentration and persistence for periods of no more than two hours at a time, after which he would be given his regularly scheduled break; and never working in an environment that was stringently production or quota-based, and never performing fast-paced assembly line type of work, but he could meet production requirements that allow him to sustain a flexible and goal oriented pace.

At step four, the ALJ concluded that, over the relevant time period, Plaintiff would be unable to perform his past relevant work as a lathe machine operator or millwright. However, at step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ found that, from February 16, 2011 to October 24, 2016, there were jobs that existed in significant numbers in the

4

national economy that Plaintiff could have performed, leading to a finding that he was not disabled under the Social Security Act during the relevant time period.

## DISCUSSION

### I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one to four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

5

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is thus limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence is . . . 'more than a mere scintilla.' . . . It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019) (citations omitted). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

6

However, even under this relatively lenient standard, an ALJ is not absolved of her duty to support the decision with record evidence. *See Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016) ("We will uphold an ALJ's decision if it is supported by substantial evidence, but that standard is not satisfied unless the ALJ has adequately supported his conclusions."). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a plaintiff, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

7

### III. ANALYSIS

Plaintiff first argues that a benefits award is appropriate because all factual issues have been resolved and they support only one conclusion. Plaintiff further argues that the ALJ's decision was in error for several reasons, including: (1) the opinion of the medical expert ("ME") supported the disabling opinions of other mental health professionals; (2) the ME's opinion precluded work above the sedentary level; (3) the ALJ failed to include Plaintiff's marked limitation in concentrating, persisting, or maintain pace in the RFC or the hypothetical questions; (4) the ALJ improperly gave little weight to the disabling opinion of the most recent medical examiner; (5) the ME's opinion required the ALJ to develop the record with further testing; and (6) the ALJ failed to analyze Plaintiff's asserted unsuccessful work attempt properly. Each argument will be addressed below.

#### A. <u>Appropriateness of Benefits Award</u>

Plaintiff argues that a benefits award is appropriate because "all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion – that [Plaintiff] qualifies for disability benefits." (Pl.'s Br. at 5. (citation omitted).) According to Plaintiff, "[t]he record contains no evidence that Plaintiff can concentrate more than an iffy 85 percent of the time" and "[t]he only jobs that were otherwise available for anyone with Plaintiff's RFC . . . required someone capable of concentrating 90 to 95 percent of the time." (*Id.* at 5-6.) The Court rejects this argument because, as explained further below, no medical professional has opined that Plaintiff could not in fact

8

concentrate 90% or 95% of the time if his work duties were properly distributed and his concentration deficits were otherwise accommodated. In short, the evidence is nowhere near as clear cut as Plaintiff makes it out to be, and the record does not support but one conclusion. Accordingly, Plaintiff's first argument must fail.

**B.    Issues Relating to Concentration, Persistence, or Pace**

Many of Plaintiff's arguments pertain to his limitations with concentration, persistence, or pace. The ALJ determined that Plaintiff had a marked limitation in that functional area. (R. 1268.) Plaintiff does not quarrel with that determination itself. In other words, Plaintiff does not maintain that he in fact had an extreme limitation in concentrating, persisting, or maintaining pace. This negates Plaintiff's confusing argument that the ALJ did "not point[] to any logical reason to discount the opinions of [mental health professionals] that Plaintiff was markedly impaired in concentrating, persisting or maintaining pace." (Pl.'s Br. at 10.) The ALJ did indeed find that Plaintiff had a marked limitation with concentration, persistence, and pace, so Plaintiff's point in that regard is elusive.

Plaintiff contends generally that the ALJ's RFC assessment failed to account for his marked limitations in concentration, persistence, or pace. However, Plaintiff does not assert the oft-raised argument that the ALJ's RFC assessment is faulty because it is cast in "boilerplate" terms. That is for good reason. As recited above, the ALJ's RFC assessment went into detail in limiting Plaintiff to "performing no more than simple, routine, repetitive tasks, performed in a predictable and routine work setting; understanding, remembering, and carrying out no more than simple

9

instructions of one or two steps, consistent with Specific Vocational Preparation 1 and 2 jobs; . . . and never working in an environment that was stringently production or quota-based and, thus, never performing fast-paced assembly line type work." (R. 1269-70.) Specifically concerning Plaintiff's off-task time, the ALJ further limited Plaintiff to "sustaining concentration and persistence for periods of no more than two hours at a time, after which he would be given his regularly scheduled break." (*Id.*) As the Seventh Circuit has recognized, with respect to limitations in concentration, persistence, or pace, "there is only so much specificity possible in crafting an RFC." *Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020). Here, given the ALJ's specificity as to Plaintiff's work limitations, the Court finds that "[t]he law required no more." *Id.*

Plaintiff's primary overall contention – which he repeats in several iterations – is that because the ME testified that Plaintiff "might be able to concentrate eighty-five percent of the time" there should have been a finding of disability because the VEs "testified that the only jobs above the sedentary level otherwise permitted by the ALJ's hypothetical required concentration 90 or 95 percent of the time." (Pl.'s Br. at 11.) It is true that at the third hearing the VE testified that "employers will tolerate a maximum off task rate of 10%" and "[a]nything greater than 10% would be work preclusive." (R. 1310.) However, in asserting that this is conclusive as to his disability, Plaintiff has distorted the ME's testimony.

10

At the second hearing, the following exchange between Plaintiff's counsel and the ME occurred:

> Q. Before the end of 2013, do you think [Plaintiff] could have concentrated 85 percent of the time?
>
> A. In my opinion, based on what's in the record, I believe – concentration is easier to talk about in shorter bouts of time than in terms of a collective 85 percent. If it's distributed properly, yes, I expect he'd be able to concentrate 85 percent of the time.

(*Id.* at 628.) The ALJ's decision specifically grappled with this testimony in relation to Plaintiff's argument, aptly reasoning as follows:

> Specifically regarding the claimant's concentration difficulties, during the July 2019 hearing, the claimant's representative argued that the medical expert at the April 2017 hearing testified that the claimant could not concentrate more than 85 percent of the time. However, the claimant's representative has misstated the medical expert's testimony. During the April 2017 hearing, the medical expert indicated that her recommended marked limitation in concentrating, persisting, or maintaining pace was mostly due to concentration issues. The medical expert also recommended limiting the claimant to simple one to two step instructions. Then the medical expert was asked if the claimant "could have concentrated 85 percent of the time?" In response, the medical expert testified that "concentration is easier to talk about in shorter bouts of time than in terms of a collective 85 percent. If it's distributed properly, yes, I expect he'd be able to concentrate 85 percent of the time" As such, the medical expert was not asked whether the claimant could concentrate more than 85 percent of the time; rather, the medical expert was asked whether the claimant could concentrate 85 percent of the time. Additionally, the medical expert explained that concentration is better explained in shorter bouts of time, rather than in collective percentages.

(*Id.* at 1276 (citations omitted).)

The Court finds the ALJ's reasoning in that regard to be on point. Plaintiff's "85 percent" argument is premised on the notion that Plaintiff definitively would be off task greater than 10% of the time or, on the flipside of the coin, could not

11

concentrate 90% of the time. The problem for Plaintiff is that no medical expert specifically opined that Plaintiff would in fact be off task more than 10% of the time and/or could not in fact concentrate 90% of the time. Defendant is correct that Plaintiff's counsel asked the ME whether Plaintiff could concentrate for 85% of the workday, rather than asking if Plaintiff could concentrate *only* for 85% of the workday. As such, the ME testified that Plaintiff *could* concentrate 85% of the workday, and, crucially, the ME did not testify that Plaintiff *could only* concentrate for 85% of the workday. Given the ME's opinion that Plaintiff could concentrate 85% of the time, it is not too much more of a stretch that Plaintiff could concentrate 90% of the time if he was otherwise accommodated (*e.g.*, with simple two-step tasks in two-hour increments). Ultimately, Plaintiff has not met his burden of establishing that his impairments made it such that he could not concentrate 90% of the time.

The ME testified that Plaintiff "would be able to handle simple job tasks . . . involving one or two-step instructions" and would "fair best in a fairly predictable setting." (R. 623-24). The ALJ incorporated those recommended accommodations in her RFC assessment. Plaintiff maintains that "[t]he failure to define the limitation in concentration, persistence and pace in terms of a percentage was . . . inadequate." (Pl.'s Br. at 12.) However, as Defendant points out, no doctor recognized a CPP-related limitation in terms of a percentage and it was Plaintiff's burden to establish a percentage limitation. The ALJ explained that Plaintiff's counsel had misstated "the medical expert's testimony regarding the percentage of time the claimant could concentrate" and specifically considered off-task time. (R. 1280.) The ALJ reasoned

12

that "the evidence does not support the claimant specifically needing an off task limitation as his difficulties with concentration have been accommodated by him being limited as documented in the residual functional capacity finding." (*Id.*) In providing this analysis, the ALJ built the requisite logical bridge pertaining to off-task time. *See Simpson v. Berryhill*, No. 17-cv-2299, 2018 U.S. Dist. LEXIS 82049, at *62 (N.D. Ill. May 16, 2018) ("The Court is able to follow the logical bridge the ALJ has set forth from the evidence to his conclusion with respect to the 90% productivity figure."). Cases finding an absence of a logical bridge with respect to off-task time are distinguishable. *Cf. Jacob D. v. Kililo Kijakazi*, No. 20-cv-0554, 2021 U.S. Dist. LEXIS 156869, at *12-15 (N.D. Ill. Aug. 19, 2021) ("[T]he ALJ included no off-task discussion or finding or in her decision. . . . This is error, as there is no logical bridge to follow to any conclusion about off-task time."). Ultimately, the Court rejects Plaintiff's arguments predicated on his unsubstantiated 85% concentration capacity.

### C. The ALJ's Consideration of Opinion Evidence

Buried within other arguments, Plaintiff maintains that "[t]he reasons the ALJ gave for rejecting the opinions of Dr. Gokhale and Dr. Kieffer are inadequate." (Pl.'s Br. at 11.) The Court disagrees. The ALJ assessed Dr. Sudhir Gokhale's opinions as follows:

> [Dr. Gokhale], one of the claimant's providers, opined that the claimant had at best fair ability to understand, remember, and carry-out short and simple instructions and remember locations and work like procedures as well as sustain an ordinary routine without supervision; had poor ability to perform activities within a schedule, work with or near others, complete a normal workday or workweek, perform detailed

13

> work, maintain attention and concentration for detailed periods, and adhere to [a] schedule with regular attendance; and had at best fair but generally poor ability to respond to workplace changes, maintain awareness for hazards, travel, set goals, and interact with others appropriately. This opinion is afforded little weight because it was provided only nine months into the period at issue and therefore does not reflect the record as a whole, it appears based on a period of exacerbation or a singular episode of major depression which did not last more than a few months, and the record shows that the claimant's symptoms later improved as evidenced by his lack [of] ongoing treatment, lack of deficits noted, and him returning to work at substantial gainful activity levels.

(R. 1277 (citations omitted).) The ALJ must "offer good reasons for discounting" the opinion of a treating physician. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations omitted). The Court finds that the ALJ offered sufficiently good reasons here. Specifically, as recited above, the ALJ permissibly discounted Dr. Gokhale's opinions on the grounds that they reflected a period of exacerbation and were not representative of the period under consideration as a whole. *See Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) ("An ALJ may discount a treating physician's medical opinion . . . as long as he 'minimally articulate[s] his reasons for crediting or rejecting evidence of disability.'") (citations omitted).

> With respect to Dr. Christine Kieffer's opinions, the ALJ reasoned as follows:
>
> Christine Kieffer, Ph.D., one of the psychological consultative examiners, opined that the claimant had a marked impairment in attention, concentration and arithmetic calculation; had somewhat impaired abstract conceptual reasoning; and had no impairment with social judgment. This opinion is afforded some weight because the record demonstrates that the claimant had a marked limitation in concentration based on his subjective reports and his family noting his difficulties with concentrating, treatment notes stating his deficits, and him being able to perform serial 7s. However, a mild limitation in

14

> interacting with others is supported based [on] reports from the claimant and others that he had difficulty in crowds.

(R. 1277 (citations omitted).) An ALJ "is required to consider a consultative examiner's opinion and explain the weight given to such an opinion in his decision." *Lucio v. Barnhart*, No. 03 C 7078, 2004 U.S. Dist. LEXIS 12207, at *38 (N.D. Ill. June 22, 2004) (citation omitted). Per the above-quoted passage, the ALJ did that here. The ALJ provided a sufficient explanation for why she found Dr. Kieffer's opinions to be consistent or inconsistent with the other evidence in the record. *See Johnny T. Saul*, No. 17 C 8671, 2020 U.S. Dist. LEXIS 3387, at *13 (N.D. Ill. Jan. 9, 2020) (citation omitted). ("An ALJ may discount the opinion of a consultative examiner . . . as long as he provides good reasons for doing so.") (citation omitted).

Finally, Plaintiff devotes a total of two paragraphs to an argument that "[t]he ALJ improperly gave little weight to the disabling opinion of the most recent medical examiner [Dr. M.S. Patil]." (Pl.'s Br. at 13.) The ALJ assessed Dr. Patil's opinions as follows:

> M.S. Patil, M.D., one of the internal medicine consultative examiners, opined in March 2017 that the claimant could lift/carry twenty-five pounds frequently and fifty pounds occasionally; could stand for two hours in an eight-hour workday; could walk for two hours in an eight-hour workday; could frequently reach, handle, finger, feel, push, pull, climb, balance, stoop, kneel, crouch, crawl, and use foot controls; and would be limited in terms of environmental tolerance. This opinion is given little weight because it was provided almost six months outside the period in question and is therefore not reflective of the claimant's physical capacity prior to that date, particularly with regard to standing and ambulating. Additionally, although limitations regarding the claimant's ability to perform postural movements and turn his neck are supported in the record, there is little to no support, except for the claimant's subjective reports, for the limited use of his hands, the heavier exertional level, and the standing/walking limitation, as there are large gaps in treatment, there is a lack of consistently reported

15

> complaints, and the claimant worked at substantial gainful activity levels during the period in question.

(R. 1278 (citations omitted).) Again, the Court finds that the ALJ properly "consider[ed] [the] consultative examiner's opinion and explain[ed] the weight given to such an opinion in [her] decision." *Lucio*, 2004 U.S. Dist. LEXIS 12207 at *38. The ALJ reasonably discounted Dr. Patil's opinions for being outside the period in question and as being inconsistent with Plaintiff's treatment history and ability to engage in substantial gainful activity. *See Johnny T.*, 2020 U.S. Dist. LEXIS 3387 at *13. Ultimately, the Court finds unavailing Plaintiff's arguments concerning the medical opinion evidence.

        **D.**     <u>**The Necessity of Further Testing**</u>

Plaintiff argues that further testing was required because "the ME was concerned that 'there might be some intellectual or cognitive impairment that has not been adequately evaluated.'" (Pl.'s Br. at 13.) However, an ALJ is not mandated "to order additional testing based simply on the inconclusive nature of certain evidence." *Evans v. Bowen*, 675 F. Supp. 1117, 1127 (N.D. Ill. 1987). "Rather an ALJ is compelled to order additional examinations when, without such evidence, the ALJ cannot make an 'informed choice.'" *Id.* (citations omitted). Here, the ALJ reasonably concluded that Plaintiff's possible impairment of borderline intellectual functioning was not medically determinable. (R. 1265.) In support of her conclusion, the ALJ aptly reasoned that "there is an absence of any diagnosis or even speculation of significantly impaired intellectual functioning anywhere else in the record" aside from a single consultative examination "either by a treating or examining source."

16

(*Id.*) Moreover, and in any event, to the extent Plaintiff asserts that he may have borderline intellectual functioning, it was his burden to supply records supporting such an impairment. *See Jones v. Berryhill*, No. 16 C 9113, 2018 U.S. Dist. LEXIS 85135, at *13 (N.D. Ill. May 22, 2018) ("Nor was there a need for the ALJ to order additional testing, particularly because [i]t is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability.") (citation and internal quotations omitted). Accordingly, the Court rejects Plaintiff's argument that the ALJ should have ordered further testing as to his possible cognitive impairments.

### E. Plaintiff's Unsuccessful Work Attempt Argument

Plaintiff asserts that the ALJ should have construed his work activity for the period from June 12, 2012 to July 31, 2012 as an unsuccessful work attempt. As stated above, the ALJ determined that Plaintiff had engaged in substantial gainful activity during that time period. (R. 1262.) The ALJ found that, during that time, Plaintiff made $5,925 for performing 372 hours of work. (*Id.*) In finding that there was no evidence of an unsuccessful work attempt, the ALJ explained that "the claimant has offered no proof beyond his own testimony that he was let go due to deficiencies in job performance, which, even if true, were at least somewhat contradicted by the fact that he was apparently working overtime during this period." (*Id.*) The Court finds the ALJ's reasoning in that regard sufficient. Moreover, as Defendant points out, Plaintiff's argument is without merit because the ALJ proceeded with the sequential evaluation process beyond step one. Thus,

even if Plaintiff were to establish this two-month period to be an unsuccessful work activity, he would still need to show the remainder of the ALJ's decision lacked merit to warrant remand. As explained herein, the Court finds that Plaintiff has not raised any issues warranting remand. Accordingly, the Court rejects Plaintiff's final argument.

## CONCLUSION

For the foregoing reasons, the points of error raised by Plaintiff are not well taken. Accordingly, Plaintiff's motion to reverse or remand the Commissioner's decision [Doc. No. 12] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 21] is granted.

**SO ORDERED.**      **ENTERED:**

**DATE:**    **June 22, 2022**

                                     **HON. MARIA VALDEZ**
                                     **United States Magistrate Judge**